UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

GERALD NANNINGA,                                    CIVIL NO. 04-882 (MJD/JSM)

      Plaintiff,

                                 <u>REPORT AND RECOMMENDATION</u>

v.

BEST BUY CO.,

      Defendant.

      JANIE S. MAYERON, U.S. Magistrate Judge

      The above matter came on before the undersigned upon defendant's Motion for Summary Judgment [Docket No. 41] and plaintiff's Motion for Summary Judgment [Docket No. 49].  Steven A. Smith, Esq. and Katherine C. Bischoff, Esq. appeared on behalf of plaintiff.  Thomas C. Mahlum, Esq. and Ryan D. Chandlee, Esq. appeared on behalf of defendant.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

      For the reasons discussed below, IT IS RECOMMENDED THAT:

      1.     Defendant's Motion for Summary Judgment [Docket No. 41] be **GRANTED** in part as to Counts II, III, IV, V, and VI of plaintiff's First Amended Complaint and **DENIED** without prejudice as to Count I;

      2.     Plaintiff's Motion for Summary Judgment [Docket No. 49] be **DENIED** without prejudice as to Count I and **DENIED** with prejudice in part as to Count VI of plaintiff's First  Amended Complaint; and

3.      That Counts II, III, IV, V, and VI of plaintiff's Amended Complaint be **DISMISSED WITH PREJUDICE**.

## I.      FACTUAL BACKGROUND

This matter arises out of defendant Best Buy Company, Inc.'s ("Best Buy") refusal to pay certain monies owed under a separation agreement to plaintiff Gerald C. Nanninga ("Nanninga"), when it discovered that Nanninga had taken company documents with him after his separation with the company.

Prior to his departure, Nanninga was the Vice President of Strategy, Content & Context for Best Buy.  See First Amended Complaint, ¶¶ 5-6; see also Answer to First amended Complaint, ¶¶ 5-6. In December of 2002, a position in Nanninga's department for a Strategy Development Director became available.  See Declaration of Julie Gilbert ("Gilbert Decl."), ¶ 14; see also Affidavit of Katherine C. Bischoff ("Bischoff Aff."), Ex. 1 at p. 73 (Nanninga Depo.).   A friend of Nanninga, Jeff Edman ("Edman"), was interviewed for the position.  See Gilbert Decl., ¶ 14.  Edman's interview was conducted on January 23, 2003, and the interviewers decided after the meeting not to extend an offer to him.  Id., ¶¶ 14-15.  On January 30, 2003, Nanninga was notified by email that Edman was not offered the job on the grounds that he did not have the necessary depth required in the areas of strategic planning knowledge, process management skills, and experience.  See Declaration of Thomas C. Mahlum ("Mahlum Decl."), Ex. N (January 30, 2003 email exchange between Nanninga and Ramin Rigi).  Nanninga replied to this email and expressed his unhappiness with Best Buy's failure to hire Edman.  Id. Nanninga also stated that there might be a fear that Edman "is an 'old school' person in terms of strategy and doesn't 'get it' with regards to modern thinking around strategy

which we want to use here at Best Buy. . . ."   Id.; see also Bischoff Aff., Ex. 4 (same). According to Nanninga, he had lunch with Edman on January 30, 2003, and that Edman told him he was concerned about statements made by Julie Gilbert ("Gilbert"), Best Buy Vice President of Premium Segment--specifically, that Gilbert wanted Nanninga's job; that she wanted to fire someone on her staff; that she allegedly said that she wanted to hire someone young because Best Buy is "using new tools in new ways," and that she wanted to hire someone who does not follow the old way of doing things.   Id., Ex. O (Jeff Edmond Investigation Time Line and Facts); see also Bischoff Aff., Ex. 5 (same); Bischoff Aff., Ex. 1 at pp. 153-54 (Nanninga Depo.).   On January 31, 2003, Edman sent an email to Ramin Rigi ("Rigi"), at Best Buy, notifying him that he was withdrawing his application due to ethical concerns he had with Gilbert.   See Bischoff Aff., Ex. 5; see also Mahlum Decl., Ex. O.

On February 10, 2003, Nanninga met with Suzanne Roemer ("Roemer"), the Human Resources Manager for his group, to discuss the Edman situation.   See Bischoff Aff., Ex. 6 at pp. 21-23 (Roemer Depo.); see also Mahlum Decl., Ex. O.   During the meeting, Nanninga stated his belief that age-based comments were made to Edman during his interview.   Roemer contacted Edman to get his version of the story, but Edman did not respond.   See Bischoff Aff., Ex. 6 at p. 23.   Roemer also interviewed Gilbert who denied making any age disparaging remarks.   Id. at pp. 23-24; see also Gilbert Decl., ¶ 16.   Roemer closed the investigation, finding that there was no evidence demonstrating that Gilbert had made age disparaging remarks to Edman during his interview.   See Mahlum Decl., Ex. F at pp. 25-26 (Roemer Depo.).

On Friday February 28, 2003, Nanninga met with his supervisor Philip Schoonover ("Schoonover"), to discuss being placed on a Performance Improvement Plan ("PIP").  See Mahlum Decl., Ex. B at p. 26 (Nanninga Depo.); see also Bischoff Aff., Ex. 1, at p. 26 (same).  The PIP provided that:

- In August and September 2002 feedback was given to Nanninga that demonstrated his colleagues and subordinates had issues with his leadership, his negativity, and disrespect.

- On September 16, 2002, Nanninga referred to his supervisor as "pure evil" to several of Nanninga's subordinates and told them there would be more lay-offs.

- That Nanninga impugned the new direction of the strategy group.  Nanninga was told that he needed to be committed to the new direction and show positive leadership.

- That he failed to work collaboratively with colleagues, including Gilbert, and that he was agreeing with the ideas of colleagues to their faces but then berating them in front of management.

- That he continued to be disrespectful and negative.  In addition, that in the last few months, multiple groups had complained about Nanninga's negativity.

See Mahlum Decl., Ex. E. (Performance Improvement Plan).

Nanninga alleged that prior to being given the PIP, Schoonover was angry that Nanninga had written an email to Rigi relating to his belief that age-discrimination had occurred with regards to Edman.  Id., Ex. B at p. 25 (Nanninga Depo.).  Plaintiff was offered the option of accepting the PIP or resigning.  Id.  According to Nanninga, after Schoonover left the meeting, Robert Vipperman ("Vipperman"), who was also present at the meeting from Best Buy's Human Resources Department, told Nanninga that he could offer him a separation agreement.  Id. at pp. 25, 27.

After the meeting with Schoonover, and after his discussion with Vipperman, Nanninga instructed his assistant, Lynnae Hanson ("Hanson") to copy Best Buy

documents onto CD-ROMs.  <u>See</u> Mahlum Decl., Exs. B at p. 32-36 (Nanninga Depo.), S at pp. 26-27 (Hanson Depo.); <u>see</u> <u>also</u> Bischoff Aff., Ex. 8 at pp. 13-14 (same). Included on the disks were presentations made to Best Buy's Board of Directors that detailed Best Buy's new marketing and sales strategy.  <u>See</u> Mahlum Decl., Ex. F at p. 54; <u>see</u> <u>also</u> Declaration of James S. Ringold, III ("Ringold Decl."), Exs. A-D (presentations regarding marketing and sales strategy found on Nanninga's computer), Gilbert Decl., ¶ 3.  Hanson copied the information at issue at 3:09 p.m. on Friday, February 28, 2003.  <u>See</u> Mahlum Decl., Ex. I, BBC00926.  Nanninga testified that he received a draft of the separation agreement at approximately 4:00 p.m. on February 28, 2003.  <u>See</u> Mahlum Decl., Ex. B (Nanninga Depo.) at p. 28.

Nanninga gave different reasons for copying the information onto disks.  First, Nanninga maintained that he took the disks home inadvertently and had forgotten about them.  <u>See</u> Mahlum Decl., Ex. I, BBC00987; <u>see</u> <u>also</u> Mahlum Decl., Ex. J (Kirshbaum Depo.) at p. 52.  Then Nanninga testified that during the weekend, he came to his office to pack up his belongings, took the disks carrying the information at issue to his home, and then uploaded the disks onto his personal home computer.  <u>See</u> Bischoff Aff., Ex. 1 at pp. 31, 36 (Nanninga Depo.). He also maintained that he had copied the information onto disks because of his concern that his computer was getting old and that he did not want to lose the information prior to getting a new computer.  <u>Id.</u> at pp. 34-36; <u>see</u> <u>also</u> Bischoff Aff., Ex. 8 at 13-14 (Hanson Depo.).   Then, Nanninga testified that he intentionally took the information belonging to Best Buy in case any of his former co-workers had questions for him, so he would have the documents on hand to answer their questions.  <u>See</u> Bischoff Aff., Ex. 1 at pp. 95-96 (Nanninga Depo.).

Nanninga informed Best Buy of his decision to leave its employment on Monday March 3, 2003.  Id. at pp. 29-30; see also Mahlum Decl., Ex. B at pp. 29-30, Ex. G, ¶ 1 (Separation Agreement), H, ¶ 1 (Nanninga Sworn Statement).

On March 11, 2003, Nanninga signed the Separation Agreement and Release of Claims ("Separation Agreement").  See Mahlum Decl., Ex. G; Bischoff Aff., Ex. 9.  The Separation Agreement contained provisions requiring Best Buy to provide Nanninga with a lump sum payment equal to 48 weeks of pay, and payment of a portion of his COBRA benefits, outplacement services, and his bonus for fiscal year 2003.  Id.  In exchange for these items, Nanninga promised to return any Best Buy property in his possession, including documents or other information, on or before March 14, 2003; that he would not "use" or "disclose" any confidential information concerning Best Buy; that he would not be employed as an employee, consultant or contractor with Best Buy's competitors, Wal-Mart, Dell, Circuit City or Dell, for a period of twelve months; and that he would release all claims against Best Buy.  Id.

Prior to March 14, 2003, Nanninga returned property belonging to Best Buy as set out in the Separation Agreement, but did not return the disks containing the information he had his assistant download on February 28, 2003.  See Mahlum Decl., Ex. B at pp. 37-38.

On March 16, 2003, Best Buy began receiving anonymous tips that Nanninga had made copies of confidential information, including financial, strategic and marketing files, and that Nanninga had taken this information home with him.  See Mahlum Decl., Ex. I, BBC 00935; see also Bischoff Aff., Ex. 10.  In addition, the anonymous caller asserted that Nanninga was selling this information to competitors and was bragging

about his actions.  Id.  The anonymous tipster also called Best Buy on April 28, 2003, and June 2, 2003 reporting similarly that Nanninga, knowing that his employment with Best Buy was coming to an end, had taken information from Best Buy, was giving the information to others in order avoid having the information found at his house, and was providing this information to competitors of Best Buy.  Id., BBC 00941, BBC 00948-00948.

Around the same period of time that the anonymous tips were being received by Best Buy regarding Nanninga, he was allowed by Best Buy to gain access to the outplacement services provided by the Separation Agreement, and he also received money from Best Buy related to his bonus check and his retirement plan.  See Bischoff Aff., Ex. 1 at pp. 38-40 (Nanninga Depo.).

As a result of the anonymous tips, Best Buy retained Will Docken Investigations, a computer forensic expert, to determine whether information had been copied and shared from Nanninga's computers.  See Mahlum Decl., Ex. J (Kirshbaum Depo.) at pp. 21-22; see also Bischoff Aff., Ex. 6 at p. 61 (Roemer Deposition).  During this time period, Nanninga stated that he had contacted Best Buy to inquire when he would be receiving the lump-sum payment promised to him under the Separation Agreement, to which Roemer responded that they had some "ethical concerns" and that Best Buy was conducting an investigation of Nanninga.  See Bischoff Aff., Ex. 1 at p. 40 (Nanninga Depo.).

On May 6, 2003, Best Buy interviewed Nanninga.  See Mahlum Decl., Ex. I, BBC 00987 (Notes from Nanninga Interview); see also Bischoff Aff., Ex. 13 (same).  During the interview, Nanninga represented that he was not presently working.  Id.  At the

interview, Nanninga also allowed Best Buy to examine his personal computer and the computer hard drive was copied for examination.  See Mahlum Decl., Ex. I, BBC 00926, 00928.

The forensic examination of Nanninga's hard drive showed that some of the files at issue were copied on February 28, 2003, and that some of the files downloaded to Nanninga's computer had been accessed on March 3, March 4, March 25, March 26, April 6, April 10, and May 5, 2003.  See Ringold Decl., ¶¶ 5-14, Exs. A-J; see also Mahlum Decl., Ex. I, BBC 00926; Bischoff Aff., Ex. 1 at pp. 101-102 (Nanninga Depo.). However, at his deposition, Nanninga stated that the only time he accessed the files downloaded from Best Buy onto his home computer was May 5, 2003, the day before his interview with Best Buy, because he wanted to know what was on his computer in the event that he was going to be asked about its contents.  See Bischoff Aff., Ex. 1 at p. 101 (Nanninga Depo.).

The examination of Nanninga's hard drive also revealed an email message dated March 14, 2003 asking Nanninga if he was interested in doing consultant work for Tweeter;[1] an March 17, 2003 entry in Nanninga's computer that he had sent a draft on the research for Tweeter; a March 15-17, 2003 email exchange asking if Nanninga had any work from the past and Nanninga's response that he would bring what he had; an April 7, 2003 email discussing strategies for Tweeter; and an April 24, 2003 email stating "[w]e got the Tweeter business.  We will now have to work the research in earnest."  See Mahlum Decl., Ex. I, BBC  00928, 00974, 00978-00979, 00980; see also

---

[1]     Tweeter Entertainment Group ("Tweeter") is a home electronics store with stores located primarily in the eastern and southern United States.  See Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem.") at p. 7 (citing www.Tweeter.com).

Declaration of Ryan D. Chandlee and Exhibit Index in Support of Defendant's Reply in Support of its Motion to Compel Production of Documents by Gerald C. Nanninga and Non-Party Retail Masters LLC ("Chandlee Compel Aff."), Ex. B, BBC 01038.

After his May 6, 2003 interview, Nanninga executed a sworn statement stating that he was not working for Circuit City and that although he was performing consulting work for Tweeter, he was not using confidential information obtained during his employment with Best Buy. See Bischoff Aff., Ex. 16, ¶ 5 (Nanninga Sworn Statement). During his deposition, Nanninga admitted to working with Retail Masters Group,[2] which did consulting work for Tweeter. See Mahlum Decl., Ex. B at p. 9 (Nanninga Dep.). Nanninga's claimed role as it related to consulting work done for Tweeter, was to head consumer research. Id. In addition, Nanninga stated in his sworn statement:

> I have returned to the company all company property belonging to Best Buy, including documents, data bases and other information, except to the extent that such data and/or information may remain on my computer hard drive. Upon request from the Company, I will delete any such data from my hard drive.

See Bischoff Aff., Ex. 16, ¶ 6 (emphasis added).

Senior counsel for Best Buy, Janet Kirshbaum, stated that she had a number of conversations with plaintiff's former counsel regarding her concern that Nanninga had documents belonging to Best Buy in his possession and that it was her understanding that Nanninga would return or destroy the relevant information on his computer. See Declaration of Jane Kirshbaum, ¶ 4.

On June 30, 2003, Best Buy sent a letter to Nanninga's counsel, which provided:

---

[2]    Retail Masters Group is a consulting company started by former Best Buy executives. See Plaintiff's Memorandum of Law in Support for Summary Judgment ("Pl.'s Mem.") at p. 8 (citing Bischoff Aff., Ex. 1 at p. 79 (Nanninga Depo.)).

We have had an opportunity to review the allegations that have been made with respect to Mr. Nanninga.

At this time, Best Buy has made a determination not to release the lump sum payment identified in Paragraph 2 of the Separation Agreement and release of Claims, to Mr. Nanninga.  Best Buy believes that there is evidence that Mr. Nanninga breached both Paragraph 7 'Return of Company Property' and Paragraph 10 'Confidential of Trade Secret Information' of that Agreement.

<u>See</u> Bischoff Aff., Ex. 12; <u>see also</u> Mahlum Decl., Ex. K.

Paragraphs 7 and 10 of the Separation Agreement provide in relevant part as follows:

7.   **Return of Company Property.**   Nanninga agrees that on or before March 14, 2003, he will return to Best Buy all property belonging to Best Buy that may be in his possession including, but not limited to, all credit cards, computers, cellular phones, other equipment, documents, data bases, and other information containing or relating to Best Buy business which may be in his possession.

\* \* \*

10.   **Confidential or Trade Secret Information.** Nanninga acknowledges that during his employment with Best Buy, he came into possession and knowledge of confidential, proprietary and trade secret information relating to the business of Best Buy, its affiliates and subsidiaries. This information is not generally known outside of Best Buy, its affiliates and subsidiary and is information developed by these companies at their own expense for the purpose of pursuing their business.   Nanninga agrees that he will neither use nor disclose to any unauthorized person, without the prior written consent of Best Buy, any confidential information concerning Best Buy, its affiliates and subsidiaries, which he obtained while in Best Buy's employ provided, however, that this paragraph shall not prevent Nanninga from the use or disclosure of information known generally to the public (other than information which Nanninga may have disclosed to the public in breach of this agreement).

See Bischoff Aff., Ex. 9; see also Mahlum Decl., Ex. G.

On July 7, 2003, Nanninga's attorney sent a letter to Best Buy demanding that it pay $5,000 (above-and-beyond the amounts Nanninga claimed were owed to him pursuant to the Separation Agreement) because of the parties' separate agreement that if Best Buy did not provide a final decision on whether or not it would pay Nanninga the amounts owed under the Separation Agreement by June 30, 2003, it would pay him $5,000.   See Bischoff Aff., Ex. 17; see also Mahlum Decl., Ex. J at pp. 26-27 (Kirshbaum Depo.).   Although Best Buy's letter was dated June 30, 2003, Nanninga's counsel claimed that it was not sent or received until July 1, 2003.   Id.   Best Buy subsequently delivered a check made payable to Nanninga in the amount of $5,000 on July 21, 2003.[3]   Id., Ex. 18.

On February 10, 2004, Nanninga commenced the present action, asserting claims of breach of contract, quantum meriut/unjust enrichment, and promissory estoppel claims arising out of Best Buy's refusal to pay a lump sum payment equal to Nanninga's 48 weeks salary.   See Amended Complaint, ¶¶ 24-39.   Further, Nanninga brought a failure-to-pay compensation claim under Minnesota Statute § 181.13.   See Amended Complaint, ¶¶ 49-51.   Plaintiff also brought claims of reprisal discrimination under Title VII, 42 U.S.C. § 2000e, et seq. and the Minnesota Human Rights Act ("MHRA") asserting that Best Buy acted adversely towards him when he made a report of age discrimination regarding an applicant who was not hired by Best Buy.   See Amended Complaint, ¶¶ 5-18, 40-48.

---

[3]    Best Buy also paid to Nanninga $5,000 to him under the Separation Agreement, because Best Buy did not come to a final decision on whether to the honor the payments due to him under the Separation Agreement before May 31, 2003.   See Affidavit of Steven Andrew Smith ("Smith Aff."), Ex. 3, ¶ 4.

In response to these claims, Best Buy asserted that Nanninga had breached the terms of the Separation Agreement, thereby discharging its obligations to him.  See Def.'s Mem. at pp. 1-2; see also Amended Answer, ¶ 50.  Further, Best Buy argued that Nanninga's claim under Minn. Stat. § 181.13 fails as the statute does not apply to payments owing after termination.  See Def.'s Mem. at p. 19.  Best Buy also maintained that the Separation Agreement bars Nanninga's Title VII and MHRA claims.  Id. at p. 20.  Finally, Best Buy argued that age is not a protected class under Title VII and that Nanninga failed to make a prima facie case of retaliation under the MHRA.  Id. at pp. 22-28.

## II.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celeotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1999).  "[S]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex, 477 U.S. at 327.  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  DePugh v. Smith, 880 F. Supp. 651, 656 (N.D. Iowa 1995) (quoting Anderson, 477 U.S. at 248).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed.  Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).   If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  Anderson, 477 U.S. at 256; Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995).  "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial."   Minnesota Laborers Health & Welfare Fund v. Swenke, 2003 U.S. Dist. LEXIS 11439, *4-5 (D. Minn. 2003) (citations omitted).   The non-moving party "must substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy."   Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995).

Summary judgment is appropriate where the material facts are not in dispute, and the court need only apply the law to the facts in the record.  See Eisenrich v. Minneapolis Retail Meat Cutters, 282 F. Supp. 1077, 1080-81 (D. Minn. 2003) (citing Oldham v. West, 47 F. 3d 985, 988 (8th Cir. 1995)).

## III.  DISCUSSION

### A.    Breach of Contract Claim

There is no dispute by the parties in this case that the Separation Agreement represents a binding contract between them.  See Pl.'s Mem. at p. 10; see also Def.'s Mem. at p. 17.   This Court agrees.   "The basic elements of a contract are offer,

acceptance, and consideration." <u>Mattice v. Minnesota Property Ins. Placement</u>, 655 N.W.2d 336, 344 (Minn. Ct. App. 2002) (citing <u>S O Designs USA, Inc. v. Rollerblade, Inc.</u>, 620 N.W.2d 48, 53 (Minn. Ct. App. 2002), <u>rev</u>. <u>denied</u> (Minn. Feb. 21, 2001), citing <u>Cederstrand v. Lutheran Bhd.</u>, 263 Minn. 520, 521-22, 117 N.W.2d 213, 220-21 (1962)). Here, Best Buy offered the Separation Agreement to Nanninga on Friday February 28, 2003. <u>See</u> Mahlum Decl., Ex. B at pp. 27-28 (Nanninga Depo.). Nanninga signed the Separation Agreement on March 11, 2003, <u>See</u> Mahlum Decl., Ex. G (Separation Agreement); Bischoff Aff., Ex. 9 (same). Further, the Separation Agreement contained sufficient consideration in the form of Best Buy paying Nanninga certain benefits in exchange for Nanninga's promise that he would not work for competitors of Best Buy, that he would return all property in his possession belonging to Best Buy, that he not use or disclose any confidential information, and that he would release all claims against Best Buy. <u>Id.</u>

The issue surrounding the breach of contract claim in this case hinges on who breached the Separation Agreement first. Nanninga claimed that Best Buy materially breached the Separation Agreement when it refused to pay him a lump-sum payment equal to 48 weeks of pay. <u>See</u> Pl.'s Mem. at p. 11. There is no dispute in this case that the Separation Agreement contained a provision that provided Nanninga with a lump-sum payment equal to 48 weeks of pay. <u>See</u> Mahlum Decl., Ex. G; Bischoff Aff., Exs. 9; 21, ¶ 22; 22, ¶ 22. There is also no dispute that Best Buy refused to pay Nanninga the lump-sum payment promised to him under the Separation Agreement. <u>See</u> Bischoff Aff., Ex. 12; <u>see</u> <u>also</u> Mahlum Decl., Ex. K.

Best Buy, on the other hand, claimed that it was relieved from paying Nanninga the lump-sum payment because Nanninga materially breached the agreement by taking Best Buy property and by using the property, in violation of Paragraphs 7 and 10 of the Separation Agreement.  See Def.'s Mem. at p. 12; see also Mahlum Decl., Ex. K.

"Under general contract law, a party who first breaches a contract is usually precluded from successfully claiming against the other party." Carlson Real Estate Co. v. Soltan, 549 N.W.2d 376, 379 (Minn. Ct. App. 1996) (citing Space Ctr., Inc. v. 451 Corp., 298 N.W.2d 443, 451 (Minn. 1980)) (additional citation omitted), rev. denied (Minn. Aug. 20, 1996)); see also Slidell, Inc. v. Millennium Inorganic Chemicals, Inc., No. Civ. 02-213 (JRT/FLN), 2004 WL 1447921 at *11 (D. Minn. 2004) (same) (citations omitted); MTS Co. v. Taiga Corp., 365 N.W.2d 321, 327 (Minn. Ct. App. 1985) ("A rule in the law of contracts is that a party cannot raise to its advantage a breach of contract against another party when it has first breached the contract itself.") (string citation omitted). "The first breach serves as a defense against the subsequent breach." Carlson Real Estate Co., 549 N.W.2d at 379; see also Restatement (Second) of Contracts § 237 (providing that uncured material breach relieves non-breaching party of obligation to render further performance).

1.    Breach on the Part of Nanninga

Here, the undisputed facts in this case show that on February 28, 2003, after Nanninga had been given an unfavorable review and PIP, and had been told that he could resign and receive a separation agreement, he had his assistant copy Best Buy documents onto CD-ROMs, including presentations to Best Buy Board of Directors which detailed Best Buy's new marketing and sales strategy.  See Mahlum Decl., Exs. B

at pp. 25-28, 32-36 (Nanninga Depo.), S at pp. 26-27 (Hanson Depo.).  In addition, it is undisputed that Nanninga took the disks home, and uploaded the files onto his personal computer (even after being given a draft of the Separation Agreement).  <u>See</u> Mahlum Decl., Ex. B at pp. 28, 36 (Nanninga Depo.).  Further, it is undisputed that the forensic examination of Nanninga's hard drive showed that some of the files belonging to Best Buy were accessed on several occasions.  <u>See</u> Ringold Decl., ¶¶ 5-14, Ex. J.  Further, while Nanninga gave a different explanation for copying and taking the information home, at his deposition he testified that he intentionally took the Best Buy information in case any of his former co-workers had questions for him.  <u>See</u> Bischoff Aff., Exs. 1 at pp. 95-96 (Nanninga Dep.).  Additionally, Nanninga stated in his sworn statement that while he had returned all other property to Best Buy, he would not delete the Best Buy information uploaded onto his personal computer until Best Buy instructed him to do so. <u>Id.</u>, Ex. 16, ¶ 6 (Nanninga Sworn Statement).  There is no evidence before the Court indicating that Nanninga has deleted the information he took from Best Buy off of his personal computer.

Based on these facts, this Court finds that  Nanninga breached Paragraph 7 of the Separation Agreement by taking information belonging to Best Buy, accessing it, and not removing it from the hard drive of his personal computer.  In addition, this Court concludes that Nanninga initiated this breach before Best Buy's June 30, 2003 decision not to provide Nanninga with the lump-sum payment provided for under the Separation Agreement.[4]

---

[4]   This Court finds that Nanninga did not cure his breach of the severance Agreement by returning the CD-ROMs taken and by communicating to Best Buy that he would delete information on his computer if told to do so, as the plain language of the Separation Agreement requires Nanninga to return all Best Buy property, and not to

However, this Court cannot find as a matter of law that Nanninga breached Paragraph 10 of the Separation Agreement.  As stated previously, Paragraph 10 of the Separation Agreement prohibits Nanninga from using or disclosing to third parties confidential information belonging to Best Buy.  See Mahlum Decl., Ex. G (Separation Agreement); Bischoff Aff., Ex. 9 (same).   Notwithstanding the evidence described above, there is a factual dispute as to whether Nanninga (1) used or disclosed, (2) confidential information belonging to Best Buy.  First, while it is true that Nanninga took information belonging to Best Buy prior to leaving the company, uploaded it onto his computer, and accessed it on a number of occasions, that alone does not demonstrate that he used the information or revealed it to third parties.  The word "use" is defined as: "1. To bring into service or action . . . 2.  To put to some purpose . . . ."[5]  See Webster's II New Riverside University Dictionary, 1271 (1994).  In other words, the possession of information and even looking at it does not necessarily mean that such information was put into action or used for some purpose.  Moreover, Best Buy has acknowledged that at this time it does not have direct evidence that Nanninga has used or disclosed confidential information belonging to Best Buy and has presented no such evidence to this Court.[6]  See Bischoff Aff., Ex. 6 at p. 89 (Roemer Depo.); see also Defendant's

---

notify Best Buy that he has company information and will destroy it upon its request. See Mahlum Decl., Ex. G, ¶ 7 (Separation Agreement).

[5]    "If a contract is unambiguous, the contract language must be given its plain and ordinary meaning . . . ."  Denelsbeck v. Wells Fargo & Co., 666 N.W.2d 339, 346-47 (Minn. 2003).

[6]    This Court cannot conclude that Nanninga used and disclosed elements of the "Four Pillars" strategy merely because some of the projects he was involved for Tweeter had similar names to two of the presentations provided to Best Buy's Board.  However, this Court notes that Best Buy has motions to compel pending before this Court relating to its attempt to obtain discovery into whether Nanninga used or disclosed information

Reply Memorandum of Law in Support of its Motion for Summary Judgment ("Def.'s

Reply") at p. 8 ("Best Buy cannot know for certain what he did with the information.").[7]

---

belonging to Best Buy to third parties.  <u>See</u> Docket Nos. 18, 24.  The Court will provide relief to Best Buy as set forth in this Court's accompanying Order on these motions.

[7]    This Court rejects Nanninga's claim that Best Buy has to establish that it had definitive knowledge that he used or released information when Best Buy decided not to pay him the lump-sum payment due under the Separation Agreement.  <u>See</u> Pl.'s Mem. at p. 14. Plaintiff cites to <u>United States v. First Dakota Nat. Bank</u>, 137 F.3d 1077 (8th Cir. 1998) (applying South Dakota law) and <u>Phipps v. Skyview Farms, Inc.</u> 610 N.W.2d 723 (Neb. 2000) in support of the proposition that Best Buy must establish that at the time of its decision not pay Nanninga it knew Nanninga used or shared the information he took in order to establish a breach under paragraph 10 Separation Agreement.  First, <u>First Dakota Nat. Bank</u>, does not hold that a party asserting a breach of contract affirmative defense must know with certainty that the other party breached before refusing performance.  The Eighth Circuit only found that where a party agreed to undertake "all liabilities known and unknown", there was no support for a finding that it was not material that the breaching party failed to disclose a pending tax audit.  137 F.3d at 1078.  Further, the court in <u>Phipps</u> found that evidence of misconduct occurring after a breach only bears on the amount of the recovery and cannot provide a justification for the failure to abide by a contract.  610 N.W.2d at 733.  It is true that Best Buy did not have conclusive evidence that Nanninga shared confidential information with anyone when it decided not to pay Nanninga under the Severance Agreement. <u>See</u> Bischoff Aff., Ex. 6 at pp. 55-56, 87-89 (Roemer Dep.) (providing that Best Buy cannot be sure that Nanninga was not using the information), Ex. 24 at p. 24 (Kirshbaum Depo.) (testifying the Best Buy was not able to "conclusively determine" that Nanninga shared information taken from Best Buy).  However, Best Buy knew that Nanninga had intentionally taken information belonging to it when he ended his employment with the company, that he has conducting research for Tweeter, a Best Buy competitor, at least as of March 2003, and that Nanninga might be using "past" work for the project.  <u>See</u> Mahlum Decl., Ex. I, BBC 00928, 00974, 00978-00979, 00980; <u>see also</u> Chandlee Compel Aff., Ex. B, BBC 01038.  Nanninga also admitted in his May 15, 2003 sworn statement that he had "begun preparation of the presentation which would be made to Tweeter on the subjection of consumer research, including targeting certain types of customers."  <u>See</u> Bischoff Aff., Ex. 16, ¶ 5.  In addition, Best Buy had in its possession anonymous tips that he was bragging about stealing information from Best Buy and selling such information.  <u>See</u> Mahlum Decl., Ex. I, BBC 00935, BBC 00941, BBC 00948-00949.  All this information taken together provided Best Buy a reasonable basis to believe that Nanninga was using and disclosing information taken from Best Buy by June 30, 2003, the date it decided not to honor the Separation Agreement due to Nanninga's alleged breach of Paragraphs 7 and 10 of the Agreement.

Under Minnesota law, the requirements for concluding that information is confidential or a trade secret are:

> (1) the protected matter is not generally known or readily ascertainable, (2) it provides a demonstrable competitive advantage, (3) it was gained at expense to the employer, and (4) it is such that the employer intended to keep it confidential.

United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 633-34 (Minn. 1981) (quoting Cherne Industrial, Inc. v. Grounds & Associates, Inc., 278 N.W.2d 81, 90 (Minn. 1979)); see also Minn. Stat. § 325C.01, subd. 5.[8]

Nanninga argued that the information in the Four Pillars strategy was not confidential because Best Buy had already disclosed the information to the public. See Pl.'s Mem. at p. 23. In particular, Nanninga cites to a January 9, 2003 conference call where Best Buy identified four company goals including (1) marketing to specific customer segments; (2) becoming a more efficient enterprise; (3) providing "a comprehensive solution for the home devices, content, connections, services, [and] integration;" and (4) supporting the commerce entertainment based lifestyle. See Bischoff Aff., Ex. 26 at pp. 2-3 of 12. However, the discussion of these goals is

---

[8]     Minn. Stat. § 325C.01, subd. 5 provides:

> Trade secret. "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

extremely cursory compared to the detail found in the presentations made to the Best Buy Board of Directors on Nanninga's Computer.

In addition, Nanninga asserted that Best Buy made the Four Pillars strategy public in the May 2003 Fiscal Report to shareholders.  See Pl.'s Mem. at p. 23.  While the shareholders' report does summarize the Four Pillars strategy, it was released after Nanninga had downloaded presentations regarding the strategy onto his personal computer in the beginning of March 2003 and does not contain any information regarding the implementation of the strategy, such as was found in the presentations on his computer.  See Bischoff Aff., Ex. 27 at pp. 4-5 (May 2003 Fiscal Report to Best Buy Shareholders); see also Ringold Decl., Exs. A-D (Four Pillars Presentations); Gilbert Decl., ¶¶ 5-7 (describing that the presentations were the road map to the Four Pillars strategy and the end-product of Best Buy's strategic plan); Second Declaration of Julie Gilbert, ¶ 4.

Further, Nanninga asserted that "customer centricity" is nothing new in the retailing industry and that the architect of Best Buy's "customer centricity" strategy published his ideas in a June 2003 book.  See Pl.'s Mem. at p. 23 (citing Bischoff Aff., Exs. 30-32).  As a preliminary matter, this Court notes that the book was published after Nanninga took the information at issue with him.  More importantly, Nanninga did not present any evidence to show that the information in this book directly addresses how Best Buy is specifically implementing the customer centricity strategy in its businesses.

Finally, Nanninga argued that the information is not confidential because Best Buy did not ask him to delete the information at issue from his computer until April 18, 2005, suggesting that it did not consider the information to be confidential.  See Smith

Aff., Ex. 1 (Letter from Kirshbaum to Smith).  However, Kirshbaum stated in her letter to Nanninga's attorney that it was her recollection that she had told Nanninga's previous counsel that those materials were to be removed.  Id.; see also Kirshbaum Decl., ¶ 4. In addition, the plain language of Paragraph 7 of the Separation Agreement notified Nanninga that he was required to return all information in his possession to Best Buy by March 14, 2003, and this term was not premised on any requests by Best Buy.  See Bischoff Aff., Ex. 9.  In sum, a material fact dispute remains as to whether the information on Nanninga's computer was confidential.

2.  Materiality of Breach

As Nanninga correctly points out and Best Buy agrees, it is not enough for Best Buy to excuse its performance under the Separation Agreement by only showing a breach of contract.  Under Minnesota law, an assertion of breach of contract requires the showing of a "material breach" of the contract.  See Parkhill v. Minn. Mut. Life Ins. Co., 174 F. Supp.2d 951, 961 (D. Minn. 2000) (string citation omitted); see also LeMond Cycling, Inc. v. PTI Holding, Inc., No. Civ. 03-5441 (PAM/RLE), 2005 WL 102969 at *4 (D. Minn. Jan. 14, 2005) ("A material breach is a 'substantial breach of contract, usu[ally] excusing the aggrieved party from further performance and affording it the right to sue for damages.'") (quoting Black's Law Dictionary 183 (7th ed. 1999)).  A material breach occurs where one party to a contract refuses to perform a substantial part of the contract.  See Steller v. Thomas, 232 Mnn. 275, 282, 45 N.W.2d 537, 542 (1950) (providing that a breach is material when "one of the primary purposes" of the contract is violated).  "[A] material breach 'goes to the root or essence of the contract,' and is 'so fundamental to the contract that the failure to perform that obligation defeats an

essential purpose of the contract.'" <u>LeMond Cycling, Inc.</u>, 2005 WL 102969 at *4 (citing <u>Skogberg v. Huisman</u>, File No. C7-02-2059, 2003 WL 22014576 at *2 (Minn. Ct. App. Aug. 19, 2003), citing 15 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 44:55 (4th ed. 2000)). "[E]ven when express conditions of the contract are violated, the breach is not necessarily material." <u>Skogberg</u>, 2003 WL 22014576 at *3. Whether an act or omission constitutes a material breach of a contract is generally a fact question. <u>See</u> <u>Cloverdale Foods of Minn., Inc. v. Pioneer Snacks</u>, 580 N.W.2d 46, 49-50 (Minn. Ct. App. 1998).  However, where there are no disputes of fact, a court as a matter of law can address the issue of materiality upon summary judgment.  <u>See</u> <u>Anacapa Technology, Inc. v. ADC Telecommunications, Inc.</u>, 241 F. Supp.2d 1016, 1021 (D. Minn. 2002) (citing Corbin on Contracts § 36.5; <u>Gibson v. City of Cranston</u>, 37 F.3d 731, 736 (1st Cir. 1994)).

Nanninga argued that his "technical" breach of paragraph 7 of the Separation Agreement does not amount to a material breach.  <u>See</u> Pl.'s Mem. at p. 16.   In particular, Nanninga maintained that he returned all Best Buy property that he believed he had in his possession and returned the disks as soon as he became aware of his possession of them.  <u>Id.</u>  However, Nanninga's assertion ignores the undisputed facts that he admitted to intentionally taking the files home with him, evidence that he downloaded the files onto his personal computer, and that as of April 2005, he still had not yet deleted them.  These actions are at direct odds with an essential purpose of the Separation Agreement--protecting Best Buy's information from being released to third parties, including its former employee, Nanninga.

On the other hand, there is an issue of fact as to whether Nanninga's breach of Paragraph 7 of the Separation Agreement was material, given Best Buy's alleged inaction requesting him to remove the information from his computer, and the fact that Best Buy has been precluded from doing discovery on Nanninga's use of this information.   Best Buy had definitive proof that Nanninga had information on his computer belonging to Best Buy as of May 2003.   See Ringold Decl., ¶ 3; see also Mahlum Decl., Ex. I, BBC 00926.   In addition, on May 15, 2003, Nanninga communicated to Best Buy, in a sworn statement, that he had returned all property belonging to Best Buy, save for the information on his computer, which he would delete upon Best Buy's request.   See Bischoff Aff., Ex. 16 (Nanninga Sworn Statement). There is no documentary evidence before this Court indicating that Best Buy instructed Nanninga to remove the information off of his computer until April 18, 2005, when Best Buy's corporate counsel sent a letter instructing Nanninga to remove all Best Buy information off of his computer.   See Smith Aff., Ex. 1 (Letter from Kirshbaum to Smith). However, Kirshbaum states in her April 2005 letter that she told Nanninga's previous counsel that those materials should be removed.   Id., see also Kirshbaum, Decl., ¶ 4. Further, the plain language of Paragraph 7 of the Separation Agreement notified Nanninga of his duty to return all information in his possession to Best Buy by March 14, 2003, and did not condition this requirement on a request from Best Buy that Nanninga comply with this provision.   See Bischoff Aff., Ex. 9.

In sum, this Court finds that a fact-finder could reasonably conclude that Best Buy's failure to take affirmative actions to remove the information contained on Nanninga's personal computer, after confirming that such information was in Nanninga's

possession, demonstrates that Nanninga's actions did not amount to a material breach. However, a fact-finder could also reasonably conclude that the plain language of the Separation Agreement and Kirshbaum's recollection that she told Nanninga's counsel that Nanninga should remove any information from his computer belonging to Best Buy, shows that the taking of such information by plaintiff amounted to a material breach. Finally, even if this Court were to find that the information taken by Nanninga was not confidential, a predicate for finding a breach of Paragraph 10 of the Separation Agreement, if indeed discovery showed that Nanninga used the information on his computer, that fact could lead a jury conclude that his breach of Paragraph 7 was material.  As such, this Court concludes there is a fact issue as to whether there was a material breach of the contract and thus, no decision can be made on this issue as a matter of law.

### 3.    Damages Arising out of the Breach

Nanninga argued that Best Buy's material breach of contract defense fails as a matter of law since it cannot prove that it was injured from his alleged violation of Paragraph 7.  See Pl.'s Mem. at p. 18.  Nanninga cites to Jensen v. Duluth Area YMCA, 688 N.W.2d 574 (Minn. Ct. App. 2004), for the proposition that in order to prevail on its defense, Best Buy must establish that it was somehow damaged by Nanninga's conduct.  Id.  However, a closer reading of the Jensen decision shows that the court held that a party seeking damages for a claim of breach of contract must be able to show a reasonable basis for damages claimed in order to survive summary judgment. Jensen, 688 N.W.2d at 578-579.  The case does not hold that a party claiming breach of contract as a defense must make a showing of injury or damages.

One of the primary purposes of Separation Agreement, as it relates to the interests of Best Buy, was to protect its property, including information relevant to the operation of its business.  Nanninga's intentional taking of information belonging to Best Buy and retaining such information after his employment with Best Buy ended, circumvented this interest of securing its information.  That the damages arising out of such a breach may be difficult to quantify does not lead to the conclusion that Best Buy suffered no injury.  Cf., Skogberg v. Huisman, 2003 WL 22014576 at *2 ("If a material breach has occurred, rescission is appropriate '[w]here the injury . . . is irreparable, or where the damages would be inadequate or difficult or impossible to determine.'") (quoting Johnny's, Inc. v. Njaka, 450 N.W.2d 166, 168 (Minn. Ct. App. 1990), citing Marso v. Mankato Clinic, 278 Minn. 104, 116, 153 N.W.2d 281, 290 (1967)). 290 (1967)).

Nanninga's argument that his taking of Best Buy information cannot serve as defense against a breach of contract claim because no damage can be proven without a use, would nullify Paragraph 7 of the Separation Agreement, as Paragraph 7 only requires a taking and not a use.  Under Nanninga's interpretation, his retention of information from Best Buy, without more, could never amount to a violation of the Separation Agreement even though the parties agreed to such a provision.  This Court will not allow Paragraph 7 to be read out of the Separation Agreement.  See Independent School District No. 877 v. Loberg Plumbing and Heating Co., 266 Minn. 426, 123 N.W.2d 793, 799-800 (1963). ("[A]ny interpretation which would render a provision meaningless should be avoided on the assumption that the parties intended the language used by them to have some effect.").

Therefore, Nanninga's contention that Best Buy's material breach of contract defense must fail because Best Buy may ultimately be unable to prove up damages, is rejected.

        4.   <u>Waiver</u>

Nanninga argued that Best Buy waived any alleged material breach committed by him because it continued to honor its obligations under the Separation Agreement after his alleged breach.   <u>See</u> Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp. Mem.") at p. 8.   In particular, Nanninga asserted that Best Buy waived its breach of contract defense when (1) it paid $5,000 toward the Separation Agreement after it had discovered Nanninga maintained documents on his home computer; and (2) continued to pay Nanninga's outplacement services until October 2003.  <u>Id.</u> at p. 9.  Best Buy countered that its payment of the first $5,000 from the Separation Agreement took place prior to its June 30, 2005 decision not to pay him the lump sum owing under the Separation Agreement, and that there is no admissible evidence in the record that Best Buy continued to pay for Nanninga's outplacement services after June 30, 2003; only that he used these services until October 2003.  <u>See</u> Def.'s Reply at p. 9; <u>see</u> <u>also</u> Bischoff Aff., Ex. 1 at p. 39 (Nanninga Depo.).

"A party's continued recognition of a contract as binding after the other party's alleged breach acts as a waiver of that breach."  <u>Creative Communications Consultants, Inc. v. Gaylord</u>, 403 N.W.2d 654, 657 (Minn. Ct. App. 1987) (citing <u>Wolff v. McCrossan</u>, 296 Minn. 141, 210 N.W.2d 41, 43 (1973)); <u>see</u> <u>also</u> <u>Murphy Oil USA, Inc. v. Hauser</u>, 820 F. Supp. 437, 942 (D. Minn. 1993) (finding that a party who continues to recognize

a contract after an alleged breach by the other party has waived that breach); 13 Williston on Contracts § 39.28 (4th ed.) ("While a waiver may be implied from conduct in the absence of an express declaration, the waiver must be intentional  . . . [and] the intent to waive must be clearly manifested or the conduct must be such to that an intent to waive must be reasonably be inferred.").  Before the actions of a party can constitute a waiver of breach of contract, the acts relied on must have been done with knowledge of the breach.  See Northern Petrochemical Co. v. Thorsen & Thorshov, Inc., 297 Minn. 118, 131, 211 N.W.2d 159, 169 (Minn. 1973).

This Court finds that the initial payment of $5,000 to Nanninga towards the lump sum owing to him under the Separation Agreement does not amount to waiver by Best Buy of Nanninga's alleged material breach.  This money was to be paid to Nanninga in the event that Best Buy did not reach a final decision before May 31, 2003 on whether to the honor the payments due to him under the Separation Agreement.  See Smith Aff., Ex. 3, ¶ 4.  Although the money paid to Nanninga came directly from the amount allegedly owed to him under the Separation Agreement, Best Buy's payment cannot be deemed a waiver as it arose out of separate agreement which was triggered only if Best Buy made no decision at all by a set date.  By virtue of its payment of the $5,000, it is clear that Best Buy had not even come to a determination, and as such, waiver of the breach could not have occurred.

On the other hand, this Court finds there is a material factual dispute as to whether Nanninga's ability to obtain outplacement services through October of 2003 amounted to an implied waiver by Best Buy of Nanninga's breach of contract.  There is no dispute that the Separation Agreement provided for outplacement services benefits

to Nanninga. <u>See</u> Mahlum Decl., Ex. G, ¶ 6.  In addition, the evidence confirms Nanninga initially received permission from Best Buy to obtain outplacement services in March-April, 2003, before Best Buy discovered that Nanninga had Best Buy documents on his personal computer (May 6, 2003), and before it informed him of its refusal to pay the lump-sum owing under the agreement (June 30, 2003).  <u>See</u> Bischoff Aff., Ex. 1 at p. 39 (Nanninga Depo.).  It is also undisputed that Nanninga received the outplacement services through October 2003.  However, Best Buy claims it did not pay for these services and Nanninga has presented no evidence to show that Best Buy knew he was receiving them.  Lacking such evidence, this Court cannot conclude as a matter of law that Best Buy knowingly allowed Nanninga to obtain outplacement services after it determined a breach of contract occurred, and thus, it cannot conclude that that Best Buy waived Nanninga's breach of Paragraphs 7 and 10 of the Separation Agreement.

In summary, while this Court finds as a matter of law that Nanninga breached Paragraph 7 of the Separation Agreement, summary judgment cannot be granted to either party on this claim because there is a genuine dispute of material fact as to whether the breach was material.  In addition, this Court finds that there are material fact disputes as to whether Nanninga breached Paragraph 10 of the Separation Agreement, and whether Best Buy waived any breach of contract by Nanninga.  On this basis, both Nanninga's and Best Buy's cross-motions for summary judgment should be denied.

## B.    Promissory Estoppel and Unjust Enrichment Claims

Nanninga brought a breach of contract, quantum meriut/unjust enrichment, and promissory estoppel claims arising out of Best Buy's refusal to pay a lump sum payment

equal to 48 weeks of Nanninga's salary at his most recent pay rate.  <u>See</u> First Amended Complaint, ¶¶ 24-39.  Both Nanninga and Best Buy have conceded, and this Court has found, that the Separation Agreement providing for the lump-sum payment equaling 48 weeks of his salary is a part of an enforceable binding contract on the parties.  <u>See</u> Report and Recommendation, Section III.A., <u>supra</u>.

Promissory estoppel implies a contract in law "'where none exists in fact.'"  <u>Ruud v. Great Plains Supply, Inc.</u>, 526 N.W.2d 369, 372 (Minn. 1995) (quoting <u>Grouse v. Group Health Plan, Inc.</u>, 306 N.W.2d 114, 116 (Minn. 1981)).  "[A] promissory estoppel claim cannot be based on a promise contained in an enforceable contract."  <u>Difazio v. Exelon Services, Inc.</u>, No. Civ.02-3562 (JRT/FLN), 2004 WL 741563 at *6 (D. Minn. March 05, 2004) (citing <u>Banbury v. Omnitrition Int'l, Inc.</u>, 533 N.W.2d 876, 881 (Minn. Ct. App. 1995)).  "Similarly, relief under the doctrine of unjust enrichment is generally not available when a valid contract exists."  <u>Id.</u> (citing <u>United States Fire Ins. Co. v. Minnesota State Zoological Bd.,</u> 307 N.W.2d 490, 497 (Minn. 1981)); <u>see also Colangelo v. Norwest Mortg., Inc.</u>, 598 N.W.2d 14, 19 (Minn. Ct. App. 1999) (citation omitted) ("[w]here the rights of the parties are governed by a valid contract, a claim for unjust enrichment must fail.").

Because a contract in fact exists here, the doctrines of promissory estoppel and unjust enrichment do not apply.  As such, Best Buy's motion for summary judgment as to Counts II and III in Nanninga's Amended Complaint should be granted and these claims should be dismissed with prejudice.

### C.     Minn. Stat. § 181.13 Claim

Count Six of Nanninga's First Amended Complaint alleges that Best Buy violated

Minnesota's wage and penalty statutes by not paying him compensation due to him under the Separation Agreement entered into by the parties.   See First Amended Complaint, ¶ 50.   Minnesota law requires that following an employee's discharge or resignation, "the wages or commissions actually earned and unpaid at the time of the discharge are immediately due and payable upon demand of the employee."   Minn. Stat. § 181.13(a); Minn. Stat. § 181.14.   If an employer fails to timely pay earned wages within 24 hours of the employee's demand, the employer is then in default and liable to the employee for civil penalties.   Id.

In this case, Nanninga's last day of employment with Best Buy was on March 3, 2003.   See Mahlum Decl., Exs. G, ¶ 1 (Separation Agreement), H, ¶ 1 (Nanninga Sworn Statement).   However, the Separation Agreement was not entered until March 11, 2003, after Nanninga's last day of employment.   See Mahlum Decl., Ex. G; Bischoff Aff. 9. The lump-sum payment at issue was not signed by Nanninga prior to termination of employment and cannot be considered wages earned at the time of his discharge, as required by Minn. Stat. § 181.13(a).   Cf., Cole v. Holland Neway Intern., Inc., No. A03-609, 2004 WL 503751 at *3 (Minn. Ct. App. March 16, 2004) (finding that severance pay as a benefit not received until termination does not fall under the purview of section 181.13).   Given, the plain language of Minn. Stat. § 181.13, Best Buy's motion for Summary Judgment as to Count VI of Nanninga's Amended Complaint should be granted, and the claim dismissed with prejudice.

### D.    Reprisal Discrimination under Title VII and the MHRA

Nanninga also asserted claims of reprisal discrimination under Title VII, 42 U.S.C. § 2000e, et seq. and the Minnesota Human Rights Act ("MHRA") asserting that

Best Buy acted adversely towards his employment when he made a report of age discrimination regarding an applicant who was not hired by Best Buy.  See Amended Complaint, ¶¶ 5-18, 40-48.

     1.    Title VII

Title VII prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2.  This Court finds that age is not a protected class under Title VII.[9]  See Dunn v. Medina General Hosp., 917 F. Supp. 1185, 1193 (N.D. Ohio 1996) ("An age claimant's rights are simply protected by the ADEA rather than Title VII.") (citing Drez v. E.R. Squibb & Sons, Inc., 674 F. Supp. 1432, 1436-37 (D. Kan. 1987)); see also Davis v. IRS, 896 F. Supp. 978, 981 (N.D. Cal. 1995) (stating that age discrimination is governed by ADEA); Fields v. Texas Central Educational Agency, 754 F. Supp. 530, 533 (E.D. Tex 1989), aff'd, 906 F.2d 1017 (5th Cir. 1990), cert. denied, 498 U.S. 1026 (1991).  Nanninga's claim of reprisal arising out of age discrimination should be barred under Title VII as a matter of law.

     2.    MHRA

Nanninga acknowledges that he brought alternative claims to his breach of contract claim, including his claim for reprisal under the MHRA "in the event that Best Buy argued that the contract did not exist . . . ."  See Pl.'s Opp. Mem. at p. 6.  Best Buy has acknowledged, and this Court has also found, that the Separation Agreement is a binding contract on the parties.  See Def.'s Mem. at p. 17; see also, Report and Recommendation Section III.A., supra.  As such, pursuant to Nanninga's

---

[9]    This Court also notes that the ADEA protects employees who report age discrimination from retaliation.  See Trammel v. Simmons First Bank of Searcy, 345 F.3d 611, 615 (8th Cir. 2003) (citing 29 U.S.C. § 623).

representations, this Court recommends dismissal of Nanninga's reprisal claim under the MHRA.

## RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein, IT IS RECOMMENDED that:

1.      Defendant's Motion for Summary Judgment [Docket No. 41] be **GRANTED** in part as to Counts II, III, IV, V, and VI of plaintiff's First Amended Complaint and **DENIED** without prejudice as to Count I;

2.      Plaintiff's Motion for Summary Judgment [Docket No. 49] be **DENIED** with prejudice in part as to Count VI of plaintiff's First Amended Complaint and **DENIED** without prejudice as to Count I; and

3.      That Counts II, III, IV, V, and VI of plaintiff's Amended Complaint be **DISMISSED WITH PREJUDICE**.

Dated:        August 10, 2005

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **August 29, 2005** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **August 29, 2005**.